Bruce E. Clotworthy (Bar No. 10812)
HOOLE & KING, L.C.
4276 South Highland Drive
Salt Lake City, UT 84124
Telephone (801) 272-7556
Facsimile (801) 272-7557

April Hollingsworth (Bar No. 9391)
Hollingsworth Law Office, LLC
1115 South 900 East
Salt Lake City, UT 84105
Telephone (801) 415-9909
Facsimile (801) 303-7324

Attorneys for Plaintiffs

---

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

---

| | | |
|---|---|---|
| MAURINE VEATER, DONNA SMITH and GLENNA USHER, | ) | **COMPLAINT** |
| Plaintiffs, | ) | **JURY TRIAL DEMANDED** |
| BROOKLANE APARTMENTS, LLC, RONALD L. DAVIS, DAVIS BROTHERS REALTY, DAVIS BROTHERS CONSTRUCTION and STAN J. DAVIS. | ) | Case No. * |
| Defendants. | ) | Judge * |

---

Plaintiffs Maurine Veater, Donna Smith and Glenna Usher (collectively referred to herein as "Plaintiffs"), by and through their undersigned counsel, bring this action against Brooklane Apartments, LLC (the "Brooklane Apartments"), Ronald L. Davis ("Ronald Davis"), Davis Brothers Realty, Davis Brothers Construction and Stan J. Davis ("Stan Davis") (collectively referred to herein as "Defendants") for violations of Title VIII of the Civil Rights Act of 1968 (the "Fair Housing Act"), as amended by the Fair

Housing Amendments Act of 1988, 42 U.S.C. §§ 3601 *et seq.*, and related state law claims. In support thereof, Plaintiffs state as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Maurine Veater is an individual residing in Wasatch County, Utah, at Brooklane Apartments. Ms. Veater is an "aggrieved person" as defined by the Fair Housing Act, 42 U.S.C. § 3602(i).

2. Plaintiff Donna Smith is an individual residing in Wasatch County, Utah, at Brooklane Apartments. Ms. Smith is an "aggrieved person" as defined by the Fair Housing Act, 42 U.S.C. § 3602(i).

3. Plaintiff Glenna Usher is an individual who resided in Wasatch County at the time she lived in Brooklane Apartments, but is now residing in North Carolina. Ms. Usher is an "aggrieved person" as defined by the Fair Housing Act, 42 U.S.C. § 3602(i).

4. Defendant Stan Davis is a resident of Utah. During the period of time relevant to this action, Defendant Stan Davis has been the manager of a rental property (Brooklane Apartments) in the Heber, Utah area, at 110 South 500 East, Heber City, Utah. The subject property contains four or more rental units.

5. Defendant Ronald Davis is a resident of Utah and the principal in Davis Brothers Realty, which, upon information and belief, is doing business as Davis Brothers Construction. According to the signage in front of Brooklane Apartments, the apartments are "Owned and Managed by Davis Brothers Construction." The phone number listed on the signage is identical to that of Davis Brothers Realty.

6. Defendant Brooklane Apartments is a limited liability company authorized

to do business in Utah. The rental units at Brooklane Apartments are dwellings within the meaning of 42 U.S.C. § 3602(b).

7. Davis Brothers Construction is a d/b/a authorized to do business in Utah. Its principle place of business is at 540 South Main, Heber City, Utah.

8. Davis Brothers Realty is a d/b/a authorized to do business in Utah. Its principle place of business is at 540 South Main, Heber City, Utah.

9. During the period of time relevant to this action, Davis Brothers Realty and Davis Brothers Construction provided property management and development services at Brooklane Apartments, and Defendant Ronald Davis was an officer and owner of Davis Brothers Realty and Davis Brothers Construction. As manager of Brooklane Apartments, Defendant Stan Davis is an employee and/or agent of Davis Brothers Realty and Davis Brothers Construction.

10. Defendants have violated the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*, by discriminating against persons on the basis of sex, disability, income and retaliation in connection with apartment rentals at Brooklane Apartments.

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 28 U.S.C. § 2201 and 42 U.S.C. § 3613. This Court has supplemental jurisdiction over the Utah state law claims pursuant to 28 U.S.C. § 1367.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the actions giving rise to the Plaintiffs' allegations occurred in the District of Utah, the subject property is located in the District of Utah, and all of the Defendants reside and/or do business in the District of Utah.

## FACTUAL ALLEGATIONS

13. The residents of Brooklane Apartments are primarily elderly people on fixed incomes, many of whom have disabilities and all of whom are women with one exception; Plaintiffs are elderly women with disabilities, all of whom have mental health issues and physical disabilities because of their age.

14. Defendant Stan Davis has engaged in a pattern or practice of discrimination based on sex by subjecting Plaintiffs to conduct including severe, pervasive, and unwelcome sexual harassment. Such conduct has included, but is not limited to, unwanted verbal sexual advances; unwanted sexual touching; conditioning the terms and conditions of Plaintiffs' tenancies on the granting of sexual favors; entering Plaintiffs' apartments without permission or notice; and taking adverse action against Plaintiffs when they refused or objected to his sexual advances.

15. Stan Davis has also discriminated against the Plaintiffs based on their sources of income, as all of the Plaintiffs and most residents of Brooklane Apartments receive income-based subsidies for their housing. Because of the limited availability of low-income housing, Plaintiffs were hesitant to report the abuse and even submitted to it rather than lose their housing and subsidies.

16. Brooklane Apartments, Davis Brothers Realty and Davis Brothers Construction are liable for the above-mentioned discriminatory conduct of its agent, Stan Davis, whose conduct occurred within the scope of his employment and/or agency.

**CLAIM OF MAURINE VEATER**

17. Plaintiff Maurine Veater lived in Brooklane Apartments in 1999 for a short time and later moved back to the apartments in or about April 2004.

18. Soon after moving back to Brooklane Apartments, Defendant Stan Davis entered Ms. Veater's apartment in order to fix something pursuant to his position as apartment manager. At that time, Stan Davis told Ms. Veater that he wanted a hug and grabbed her arms and attempted to put them on his shoulders.

19. Ms. Veater tried to push him away, but Stan Davis placed his hands on her left breast and her buttocks.

20. Ms. Veater was shocked and humiliated by the sexual attack, particularly since Stan Davis was married and a former bishop with the Church of Jesus Christ of Latter Day Saints (the "LDS" church).

21. After this incident, Ms. Veater went out of her way to ignore Stan Davis, even refusing to ask him to fix things in the apartment that were broken because she was scared of seeing him.

22. About a year after the first incident, Ms. Veater was forced to call Stan Davis because of a broken toilet. At this time, Stan Davis again sexually assaulted Ms. Veater.

23. Stan Davis subjected Ms. Veater to two similar incidents of abuse in the Brooklane Apartment clubhouse, the last time being in August 2009. Ms. Veater did not report the sexual abuse to the police because she was terrified about losing her subsidized housing or being forced to move out of Brooklane Apartments, as had happened to other

female tenants (including Plaintiff Glenna Usher and another former tenant who had filed a police report in or around the year 2000) after they reported Stan Davis' conduct.

24. On or about November 11, 2009, Plaintiff Donna Smith confided to Ms. Veater that Stan Davis was similarly sexually harassing her. At that time, Ms. Veater confided in Ms. Smith about the abuse.

25. Ms. Smith then confronted Stan Davis about his abuse of her and Ms. Veater. Stan Davis got extremely angry and volatile with Ms. Smith and instructed her not to talk about the incidents with Ms. Veater or anyone else.

26. Less than one week after Ms. Smith confronted Stan Davis about the sexual harassment, Stan Davis told Ms. Veater that she would need to move out of Brooklane Apartments.

27. A few days later, during her therapy appointment, Ms. Veater reported the abuse and the subsequent retaliation to her therapist and case manager. At that time, her therapist informed Ms. Veater that, under Utah law, she was obligated to report the abuse to the appropriate authorities.

28. Ms. Veater was terrified about losing her housing but ultimately agreed to submit a written statement about the sexual abuse, which her therapist typed and submitted to the Heber Police Department.

29. On November 20, 2009, Stan Davis entered Ms. Veater's apartment without Ms. Veater's consent, supposedly to ask her whether her furnace and hot water heater were working. Ms. Veater told him that everything was fine and that he should leave.

30. Stan Davis entered Ms. Veater's apartment again unannounced and without authorization a few days later and said that he needed to speak with her. Ms. Veater again instructed him to leave but hesitantly agreed to meet with him at the clubhouse.

31. Ms. Veater met with Stan Davis at the clubhouse, at which time he confronted her and asked whether she had contacted the police. He then instructed her to keep quiet or risk being evicted from her apartment.

32. In or around January 2010, Ms. Veater filed a complaint of fair housing violations with the Utah Antidiscrimination and Labor Division.

33. On or about April 6, 2010, the State of Utah filed a pleading called an Information against Stan Davis in Fourth Judicial District Court in and for Wasatch County. Under oath, Mariane O'Bryant, Special Deputy Wasatch County Attorney, stated that, on information and belief, Stan Davis committed two counts of Forcible Sexual Abuse and two counts of Abuse or Neglect of a Disabled or Elder Adult.

34. On or about May 29, 2010, Stan Davis retaliated against Ms. Veater by drafting and distributing a document asking for the support of some tenants and for the eviction of others, including Ms. Veater.

35. After this time, Ms. Veater was afraid to leave her apartment for fear of seeing Stan Davis.

36. On or about October 6, 2010, Stan Davis pled no contest to three counts of Criminal Trespass.

37. Since that time, Ms. Veater has attempted to stay away from Stan Davis

but continues to fear for her safety.

**CLAIM OF DONNA SMITH**

38. Plaintiff Donna Smith moved into Brooklane Apartments in or around November 2006.

39. In the summer of 2009, Defendant Stan Davis asked Ms. Smith to go for a ride in his car.

40. During and after the car ride, Stan Davis aggressively pursued a sexual relationship with Ms. Smith.

41. Ms. Smith initially acquiesced to Stan Davis' attempts to kiss her during the car ride because he said he would not take her home unless she kissed him.

42. During the summer of 2009, despite Ms. Smith's repeated protests, Stan Davis continued to pursue a sexual relationship with her.

43. Ms. Smith repeatedly told him to stop and attempted to avoid him.

44. Although Ms. Smith did submit to some sexual contact, she did so because she felt she had to in order to keep her apartment and subsidized housing.

45. Despite the protests, Stan Davis continued his pursuit of Ms. Smith, so in September 2009, she reported the behavior to her LDS bishop. At this time, she informed her bishop that Stan Davis had been pursuing a sexual relationship with her.

46. On or about November 11, 2009, Ms. Smith told Plaintiff Maurine Veater that Stan Davis had been sexually pursuing her since early summer. At that time, Ms. Veater told Ms. Smith that Stan Davis had been abusing her.

47. Following her conversation with Ms. Veater, Ms. Smith confronted Stan

Davis about his behavior with the two women.

48. On or about November 26, 2009, Ms. Smith again reported the behavior to her bishop and continued to avoid Stan Davis for fear that he would persist with the sexual pursuit despite the fact that she had made it clear that she did not want to engage in a sexual relationship with him.

49. In January 2010, Stan Davis told Ms. Smith that the police were investigating him for sexually assaulting Ms. Veater. He further told Ms. Smith to lie to investigators and said that Ms. Veater would regret reporting his conduct to the police.

50. The day after he told Ms. Smith to lie to police, Stan Davis cornered her in the Brooklane Apartment's clubhouse and told her to sign a piece of paper stating that he was a good person. When she refused, Stan Davis told her that she would regret not signing the paper.

51. Because Stan Davis continued to verbally harass Ms. Smith and threaten her for participating in the police investigation, Ms. Smith reported the abuse to her LDS Stake President.

52. As stated above, on or about April 6, 2010, the State of Utah began investigating Stan Davis for two counts of Forcible Sexual Abuse and two counts of Abuse or Neglect of a Disabled or Elder Adult.

53. Despite being instructed by Utah County prosecutor Mariane O'Bryant to stay away from Brooklane Apartments during the investigation, Stan Davis continued to show up at the complex and threaten Ms. Smith, both with words and actions.

54. On or about May 29, 2010, Stan Davis retaliated against Ms. Smith by

drafting and distributing a document asking for the support of some tenants and for the eviction of others, including Ms. Smith.

55. After this time, Ms. Smith was afraid to leave her apartment for fear of seeing Stan Davis.

56. On or about October 6, 2010, Stan Davis, in a plea agreement with the state, pled no contest to three counts of Criminal Trespass.

57. Ms. Smith has continued to be scared to leave her apartment for fear of seeing Stan Davis and has spent much of her time away from Brooklane Apartments, staying with family.

**CLAIM OF GLENNA USHER**

58. Plaintiff Glenna Usher moved into Brooklane Apartments in late 2003 or early 2004.

59. In the early summer of 2007, Defendant Stan Davis entered Ms. Usher's apartment to fix a leak under the sink. At that time, Stan Davis grabbed Ms. Usher and began kissing and fondling her breasts.

60. Ms. Usher begged him to leave her alone, but he would not exit the apartment until she kissed him.

61. In July of 2007, Ms. Usher eventually submitted to sexual contact with Stan Davis because she was concerned about losing her subsidized housing.

62. Ms. Usher was morally concerned about what happened between her and Stan Davis and reported it to her bishop.

63. Stan Davis began entering Ms. Usher's apartment without her

authorization and consent when she was not in the apartment.

64. Ms. Usher confided in Plaintiff Maurine Veater about her situation with Stan Davis and the fact that he had been coming into the apartment without her consent.

65. Ms. Veater informed her that Stan Davis also entered her apartment without her consent when she was not home.

66. Ms. Usher began to isolate herself in her apartment, as Stan Davis would sexually pursue her when she went to the laundry room and in other non-populated areas of the apartment complex.

67. In or about August of 2007, Ms. Usher reported the abuse to her therapist.

68. When Stan Davis suspected that Ms. Usher had told another resident about the relationship, he began taking steps to evict her.

69. On or about August 16, 2007, Stan Davis passed around a petition for all of the tenants at Brooklane Apartments to sign, with the lone exception of Ms. Usher. The petition stated: "This is to certify that Stan J. Davis the manager and owner of Brooklane Apartments has treated each tenant with respect and in an appropriate manner."

70. Although the tenants signed the petition, several of them have since stated that they did so because they were afraid of retaliation from Stan Davis.

71. Between August 18 and August 27, 2007, Ms. Usher received no fewer than five letters from Stan Davis asking her to seek other housing.

72. On September 12, 2007, Ms. Usher, with the support of her therapist, filed a police report against Stan Davis with regards to his sexual abuse and harassment of her.

73. On September 26, 2007, Stan Davis sent a letter to Ms. Usher, stating: "If in fact you do not take advantage of my willingness to give you this time to find other housing then I have no alternative than to start legal proceedings to evict."

74. During the police investigation of her complaint, Stan Davis cornered Ms. Usher in the laundry room and threatened her for reporting to the police.

75. Stan Davis began a systematic campaign to force Ms. Usher to move out of Brooklane Apartments, including verbal and written threats.

76. Due to Stan Davis' continuing retaliatory conduct, in late June 2008, Ms. Usher was forced to move out of Brooklane Apartments, even though it meant losing her federally subsidized housing. As Ms. Usher was unable to afford replacement independent housing, she was forced to move to North Carolina. She wishes to move back to Utah but is currently unable to afford to do so.

77. Ronald Davis knew or should have known about Stan Davis' sexual abuse of the female tenants at Brooklane Apartments, particularly since at least one other tenant filed a police report against Stan Davis alleging similar conduct back in 2000.

**FIRST CAUSE OF ACTION**
**DISPARATE TREATMENT**
**(Against Defendants in Violation of 42 U.S.C. § 3604)**

78. Plaintiffs incorporate herein each and every allegation contained in this Complaint and allege as follows.

79. Defendants and/or their agent denied housing or made housing unavailable to Plaintiffs because of sex or disability, in violation of § 804(a) of the Fair Housing Act, 42 U.S.C. § 3604(a).

80. Defendants and/or their agent discriminated against Plaintiffs in the terms, conditions or privileges of the rental, or in the provision of services or facilities in connection therewith, because of sex or disability in violation of § 804(b) of the Fair Housing Act, 42 U.S.C. § 3604(b).

81. Defendants and/or their agent made statements to Plaintiffs with respect to rental that indicate a preference, limitation, or discrimination on the basis of sex or disability in violation of § 804(a) of the Fair Housing Act, 42 U.S.C. § 3604(c).

82. Defendants' actions or those of their agent were intentional, willful, and taken in disregard for the rights of Plaintiffs.

83. Plaintiffs have been damaged by Defendants' acts and/or omissions, and are therefore entitled to damages pursuant to 42 U.S.C. § 3614, as well as their attorneys' fees and costs of suit.

**SECOND CAUSE OF ACTION**
**INTERFERENCE, COERCION, OR INTIMIDATION**
**(Against Defendants in Violation of 42 U.S.C. § 3617)**

84. Plaintiffs incorporate herein each and every allegation contained in this Complaint and allege as follows.

85. Defendants and/or their agent coerced, intimidated, threatened or interfered with Plaintiffs in the exercise or enjoyment of, or on account of their having exercised or enjoyed, their rights under § 804 of the Fair Housing Act, in violation of § 818 of the Fair Housing Act, 42 U.S.C. § 3617.

86. Defendants' actions and/or those of their agent were intentional, willful, and taken in disregard for the rights of Plaintiffs.

87. Plaintiffs have been damaged by Defendants' acts and/or failure to act, and are therefore entitled to damages pursuant to 42 U.S.C. § 3614, as well as their attorneys' fees and costs of suit.

**THIRD CAUSE OF ACTION**
**RETALIATION**
**(Against Defendants in Violation of 42 U.S.C. § 3617)**

88. Plaintiffs incorporate herein each and every allegation contained in this Complaint and allege as follows.

89. Defendants and/or their agent retaliated against Plaintiff Maurine Veater for engaging in protected activity, namely filing a complaint with the Utah Antidiscrimination and Labor Division and reporting Stan Davis' conduct to the police.

90. Defendants and/or their agent retaliated against Plaintiff Donna Smith for engaging in protected activity, namely participating in the police investigation of Stan Davis.

91. Defendants and/or their agent retaliated against Plaintiff Glenna Usher for engaging in protected activity, namely reporting Stan Davis' conduct to the police.

92. Defendants' actions and/or those of their agent were intentional, willful, and taken in disregard for the rights of Plaintiffs.

93. Plaintiffs have been damaged by Defendants' acts and/or omissions, and are therefore entitled to damages pursuant to 42 U.S.C. § 3614, as well as their attorneys' fees and costs of suit.

**FOURTH CAUSE OF ACTION**
**PATTERN OR PRACTICE OF DISCRIMINATION**
**(Against Defendants)**

94. Plaintiffs incorporate herein each and every allegation contained in this Complaint and allege as follows.

95. Defendants' discrimination and/or that of their agent against Plaintiffs on the basis of sex or disability constitutes:

a. A pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*; and

b. A denial to a group of persons of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*, which denial raises an issue of general public importance.

96. In addition to Plaintiffs, there may be other victims of Defendants' discriminatory actions and practices who are "aggrieved persons" as defined in 42 U.S.C. § 3602(i).

97. Defendants' actions or those of their agent were intentional, willful, and taken in disregard for the rights of Plaintiffs.

98. Plaintiffs have been damaged by Defendants' acts and/or omissions, and are therefore entitled to damages pursuant to 42 U.S.C. § 3614, as well as their attorneys' fees and costs of suit.

**FIFTH CAUSE OF ACTION**
**UTAH FAIR HOUSING ACT VIOLATION**
**(Against Defendants in Violation of Utah Code Ann. § 57-21-1 *et seq.*)**

99. Plaintiffs incorporate herein each and every allegation contained in this Complaint and allege as follows.

100. Defendants' conduct and/or that of their agent constitutes discrimination in the terms, conditions, or privileges of the rental of housing because of gender,

disability and source of income, in violation of Utah Code Ann. § 57-21-5.

101. Defendants' conduct and/or that of their agent constitutes aiding, abetting, inciting, compelling or coercing the doing of any of the acts forbidden by the Utah Fair Housing Act, Utah Code Ann. § 57-21-7.

102. Defendants' conduct and/or that of their agent also constitutes engaging in reprisals against Plaintiffs for opposing a practice prohibited under the Act by filing a complaint, testifying, assisting or participating in any manner in any investigation, proceeding, or hearing under the Utah Fair Housing Act, Utah Code Ann. § 57-21-7.

103. Plaintiffs have been injured by the Defendants' discriminatory conduct and have suffered damages as a result.

104. Defendants' actions were intentional, willful, and taken in disregard for the rights of Plaintiffs.

**SIXTH CAUSE OF ACTION**
**INFLICTION OF EMOTIONAL DISTRESS**
**(Against Stan Davis)**

105. Plaintiffs incorporate herein each and every allegation contained in this Complaint and allege as follows.

106. The conduct of Stan Davis as alleged herein, was outrageous and intolerable in that it offended the generally accepted standards of decency and morality.

107. Stan Davis intentionally and negligently caused, or acted in reckless disregard of the likelihood of causing, Plaintiffs severe emotional distress.

108. As a direct and proximate result of the foregoing wrongful conduct, Plaintiffs have suffered severe pain, emotional distress and permanent injury, for which

they are each entitled to recover from Stan Davis.

109. As a further direct and proximate result of the foregoing wrongful conduct, Plaintiffs have incurred and will yet incur medical and therapy expenses, for which Stan Davis is liable.

**SIXTH CAUSE OF ACTION**
**NEGLIGENT SUPERVISION AND RETENTION**
**(Against Brooklane Apartments, Ronald Davis, Davis Brothers Realty and Davis Brothers Construction)**

110. Plaintiffs incorporate herein each and every allegation contained in this complaint and allege as follows.

111. As manager of Brooklane Apartments, Stan Davis was the employee entrusted with the management, maintenance and administration of Brooklane Apartments and all other matters relating to the tenants of the apartments.

112. Stan Davis was under the control and supervision of Brooklane Apartments, Davis Brothers Construction, Davis Brothers Realty and Ronald Davis.

113. As Stan Davis' employer, Brooklane Apartments, Davis Brothers Construction, Davis Brothers Realty and Ronald Davis are directly liable for supervising his activities carried out in the scope of his employment.

114. Brooklane Apartments, Davis Brothers Construction, Davis Brothers Realty and Ronald Davis failed to properly supervise Stan Davis, resulting in the victimization of women who were tenants of Brooklane Apartments, including Plaintiffs. Ultimately, this lack of supervision and retention led to the abuse of Plaintiffs.

115. Brooklane Apartments, Davis Brothers Construction, Davis Brothers Realty and Ronald Davis knew or should have known about the ongoing violations of

tenants' rights by Stan Davis based on police reports filed by a tenant in 2000 and Plaintiff Glenna Usher in 2007.

116. Brooklane Apartments, Davis Brothers Construction, Davis Brothers Realty and Ronald Davis retained Stan Davis in his position as manager of Brooklane Apartments despite the continued discriminatory and abusive activity of which they knew or should have known, which culminated in charges filed against him in 2010 for which Stan Davis pled no contest to three counts of Criminal Trespass.

117. Brooklane Apartments, Davis Brothers Construction, Davis Brothers Realty and Ronald Davis have failed to remove Stan Davis from his position as manager of Brooklane Apartments as of the date of the filing of this Complaint.

118. Plaintiffs are therefore entitled to damages due to the failure of Brooklane Apartments, Davis Brothers Construction, Davis Brothers Realty and Ronald Davis to supervise and the continued retention of Stan Davis as manager of Brooklane Apartments.

**PUNITIVE DAMAGES**

119. Plaintiffs incorporate herein each and every allegation contained in this Complaint and allege as follows.

120. The conduct of Defendant Stan Davis, as alleged herein, was willful and malicious or intentional conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of Plaintiffs for which he is liable in punitive damages.

**ATTORNEYS' FEES**

121. Plaintiffs are entitled to recover from Defendants reasonable attorneys' fees and costs, as provided by 42 U.S.C. § 3613(c) and Utah Code Ann. § 57-21-11.

WHEREFORE, Plaintiffs, demanding a trial by jury, pray for judgment against Defendants as follows:

1. For monetary damages to each Plaintiff for injuries caused by Defendants' and/or their agent's discriminatory conduct, pursuant to 42 U.S.C. § 3614(d)(2)(B) and Utah Code Ann. § 57-21-11;

2. For attorneys' fees and costs, pursuant to 42 U.S.C. § 3613(c) and Utah Code Ann. § 57-21-11;

3. For an order with penalties to Defendants pursuant to 42 U.S.C. § 3614(d)(1)(C) and Utah Code Ann. § 51-21-11(2)(c);

4. For an order enjoining Defendants and/or their agent from retaliating or discriminating against Plaintiffs in the future, according to Utah Code Ann. § 57-21-11;

5. For award of other appropriate monetary damages, punitive damages, equitable, temporary relief or restraining order that the Court deems justified; and

6. For prejudgment interest on all special damages and for any other relief this Court deems fair and just.

DATED this ___ day of May, 2011.

HOOLE & KING, L.C.

*/s/ Bruce Clotworthy*

Bruce Clotworthy
April Hollingsworth
Attorneys for Plaintiffs