**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **MAURINE VEATER; DONNA SMITH and NADINE RATUITA, as Personal Representative of the Estate of Glenna Usher,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiffs,** | |
| **v.** | **Case No. 2:11-cv-487-PMW** |
| **BROOKLANE APARTMENTS, LLC; RONALD L. DAVIS; DAVIS BROTHERS REALTY; DAVIS BROTHERS CONSTRUCTION; and STAN J. DAVIS,** | |
| **Defendants.** | **Magistrate Judge Paul M. Warner** |

All parties in this case have consented to United States Magistrate Judge Paul M. Warner conducting all proceedings, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[1] *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Before the court are (1) Plaintiffs' motion for partial summary judgment[2] and Defendants' cross-motion for partial summary judgment;[3] (2) Defendants' motion for partial summary judgment;[4] and (3)

---

[1] *See* docket no. 12.

[2] *See* docket no. 44.

[3] *See* docket no. 56.

[4] *See* docket no. 62.

Defendant Ronald L. Davis's ("Ronald") motion for summary judgment,[5] Defendant Davis Brothers Realty's ("DBR") motion for summary judgment,[6] and Defendant Davis Brothers Construction's ("DBC") motion for summary judgment.[7] The court held oral argument on the motions on March 7, 2014.[8] April L. Hollingsworth, Ashley F. Leonard, and Jennifer Erin Bogart appeared on behalf of Plaintiffs. Joseph E. Tesch, Jennifer A. Brown, Ruth A. Shapiro, and Kristen C. Kiburtz appeared on behalf of Defendants. At the conclusion of the hearing, the court took the motions under advisement. The court has carefully considered the parties' written submission on the motions, as well as the arguments presented by counsel at the hearing. Now being fully advised, the court issues the instant memorandum decision and order.

## GENERAL BACKGROUND

Plaintiffs are or were residents of Brooklane Apartments, LLC ("Brooklane") in Heber City, Utah. Plaintiffs are elderly women with disabilities, all of whom have mental health issues and physical disabilities because of their age. Plaintiff Maurine Veater's ("Ms. Veater") allegations relate to the conduct of Defendant Stan J. Davis ("Stan") between approximately 2004 and 2009. Plaintiff Donna Smith's ("Ms. Smith") allegations relate to Stan's conduct

---

[5] *See* docket no. 68.

[6] *See* docket no. 69.

[7] *See* docket no. 70.

[8] *See* docket no. 108.

between 2009 and 2010. Plaintiff Glenna Usher's ("Ms. Usher")[9] allegations relate to Stan's conduct in 2007.

Stan was the manager of Brooklane during the relevant time period. Ronald is an individual who has some ownership interests in the entities named as Defendants in this case. According to Defendants, DBR is a business entity through which Ronald conducts various real estate transactions. DBC was a Utah general partnership in which Stan and Ronald were general partners. Defendants assert that although DBC originally started as an active construction company, it ceased its construction activities in 1990, and thereafter remained in existence solely for the purpose of passively holding title to certain real property, including Brooklane. Defendants further assert that DBC ceased all business operations in 2006. Defendants contend that DBC has ceased to exist as a general partnership and is now a sole proprietorship owned and operated exclusively by Stan.

Plaintiffs allege that Stan has engaged in a pattern or practice of discrimination based on sex by subjecting Plaintiffs to conduct including severe, pervasive, and unwelcome sexual harassment. Such conduct has included, but is not limited to, unwanted verbal sexual advances; unwanted sexual touching; conditioning the terms and conditions of Plaintiffs' tenancies on the granting of sexual favors; entering Plaintiffs' apartments without permission or notice; and taking adverse action against Plaintiffs when they refused or objected to his sexual advances. Plaintiffs further allege that Stan has discriminated against Plaintiffs based on their sources of income, as Plaintiffs and most residents of Brooklane receive income-based subsidies for their

_____

[9] Ms. Usher was one of the original Plaintiffs in this case. Subsequently, Nadine Ratuita was substituted as a plaintiff in her capacity as Personal Representative of the Estate of Ms. Usher. *See* docket no. 49.

housing.  Because of the limited availability of low-income housing, Plaintiffs were hesitant to report the abuse and even submitted to it rather than lose their housing and subsidies.  Plaintiffs further allege that Stan has engaged in ongoing surreptitious audio and video recording of tenants of Brooklane, including but not limited to recording the conversations of Ms. Veater and Ms. Smith.  Plaintiffs obtained evidence of these recordings through the discovery process in this lawsuit.  Plaintiffs contend that Brooklane, Ronald, DBR, and DBC are liable for the above-mentioned discriminatory conduct of their agent, Stan, whose conduct occurred within the scope of his employment and/or agency.

Stan's alleged conduct toward Ms. Veater includes, attempted hugs, groping, fondling, sexual assault, and trespassing.  When confronted about the allged abuse, Stan allegedly retaliated by discriminating against Ms. Veater, which included, but was not limited to, threatened eviction.  Upon learning of Stan's conduct, Ms. Veater's therapist reported it to the authorities.  Stan was subsequently charged with forcible sexual abuse and abuse or neglect of an elder adult.  On or about October 6, 2010, Stan pleaded no contest to three counts of criminal trespass.

Stan's alleged conduct toward Ms. Smith includes, aggressively pursuing a sexual relationship with her, kissing, sexual contact, and verbal harassment.  Stan allegedly retaliated by discriminating against Ms. Smith based on her reporting of the alleged abuse, which included, but was not limited to, threatened eviction.

Stan's alleged conduct toward Ms. Usher includes, kissing, groping, fondling, sexual contact, trespassing, and threats based upon Ms. Usher's reporting of the conduct to police.  Stan

allegedly retaliated by discriminating against Ms. Usher, which included, but was not limited to, threatened eviction.

Based on those allegations, Plaintiffs have asserted causes of action against Defendants under the Fair Housing Act for disparate treatment; interference, coercion, or intimidation; retaliation; and pattern or practice of discrimination.  Plaintiffs have also asserted causes of action against Defendants for violations of the Utah Fair Housing Act.  Plaintiffs have also asserted causes of action against Stan for infliction of emotional distress, violation of the Wiretap Act (for audio and video recordings of Ms. Veater and Ms. Smith's conversations), and invasion of privacy (intrusion upon seclusion).  Finally, Plaintiffs have asserted a cause of action against all Defendants other than Stan for negligent supervision and retention.  Plaintiffs seek an award of punitive damages, an award of attorney fees, and an order enjoining Stan from engaging in similar conduct in the future.

In response to Plaintiffs' complaint, Defendants filed counterclaims against Plaintiffs for abuse of the legal process, invasion of privacy (false light), and intentional interference with economic relations.  In general, Defendants allege that Plaintiffs are responsible for initiating any alleged unwelcome contact with Stan and have made false allegations against Stan.

There are other background facts relevant to the motions before the court.  However, those facts will not be recited here.  Instead, they will be included, as necessary, in the analysis of the relevant motions.

## <u>LEGAL STANDARDS</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (quotations and citation omitted). When addressing a motion for summary judgment, the court "consider[s] the evidence in the light most favorable to the non-moving party." *Conroy v. Vilsack*, 707 F.3d 1163, 1170 (10th Cir. 2013) (quotations and citations omitted).

"'[T]he burden on the moving party may be discharged by "showing"---that is, pointing out to the district court---that there is an absence of evidence to support the nonmoving party's case.'" *Schneider*, 717 F.3d at 767 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)) (alteration in original). "If the movant carries this initial burden, the non-movant may not rest upon its pleadings, but must set forth specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (quotations and citation omitted).

## ANALYSIS

As noted above, the motions before the court are (1) Plaintiffs' motion for partial summary judgment and Defendants' cross-motion for partial summary judgment; (2) Defendants' motion for partial summary judgment; and (3) Ronald's motion for summary judgment, DBR's motion for summary judgment, and DBC's motion for summary judgment.

## I. Plaintiffs' Motion for Partial Summary Judgment and Defendants' Cross-Motion for Partial Summary Judgment

These motions relate only to two of Plaintiffs' claims against Stan: (A) violations of the Wiretap Act and (B) invasion of privacy (intrusion upon seclusion).

## A. Wiretap Act

In this portion of their motion, Plaintiffs argue that they are entitled to summary judgment on their claim under the Wiretap Act. In their cross-motion, Defendants argue that they are entitled to summary judgment on the same claim. Alternatively, Defendants argue that the court should deny the motions for summary judgment on that claim because disputed issues of material fact exist.

Plaintiffs contend that it is undisputed that Stan made audio and video recordings of Ms. Veater and Ms. Smith's conversations by way of a "hidden" camera and audio recording device in Brooklane's clubhouse, which Plaintiffs contend is not a common public area. In response, Defendants do not dispute that Stan actually recorded those conversations. However, Defendants argue that the camera and audio recording device were not "hidden" because Ms. Veater and Ms. Smith knew of their existence. Defendants further assert that the clubhouse is actually a common public area.

Plaintiff's Wiretap Act claim is brought under 18 U.S.C. § 2511. *See* 18 U.S.C. § 2511. In relevant part, that statute provides: "Except as otherwise specifically provided in this chapter . . . any person who

. . . intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication . . . shall be subject to suit as provided in subsection (5)." 18 U.S.C. § 2511(1)(a). 18 U.S.C. § 2520(a) provides for a private right of action for violations of 18 U.S.C. § 2511. *See* 18 U.S.C. § 2520(a). In such a private right of action, "appropriate relief includes--(1) such preliminary and other equitable or declaratory relief as may be appropriate; (2) damages under subsection (c) and punitive damages

in appropriate cases; and (3) a reasonable attorney's fee and other litigation costs reasonably incurred." *Id*. § 2520(b)(1)-(3).

Plaintiffs contend that it is undisputed that Stan's conduct in recording Ms. Veater and Ms. Smith's conversations violated 18 U.S.C. § 2511. Accordingly, Plaintiffs argue that they are entitled to summary judgment on that claim. Provided their motion is successful, Plaintiffs ask the court to set an evidentiary hearing to determine damages.

Defendants respond by arguing that Plaintiffs' motion must fail because Ms. Veater and Ms. Smith did not have an objective or subjective expectation of privacy for conversations in a public common area. *See United States v. Longoria*, 177 F.3d 1179, 1181-82 (10th Cir. 1999) (providing that essential elements of a violation of the Wiretap Act are that the plaintiff must have "an actual, subjective expectation of privacy - i.e., that his communications were not subject to interception" and that the "expectation is one society would objectively consider reasonable").

The court concludes there are material facts in dispute concerning Plaintiffs' Wiretap Act that preclude summary judgment. Indeed, as demonstrated by the briefing on the motions, almost all of the material facts related to that claim are disputed. Most importantly, there are material facts in dispute about whether the Brooklane clubhouse is a common public area. Those facts go to whether Ms. Veater and Ms. Smith had "an actual, subjective expectation of privacy" concerning their conversations in the clubhouse. *Id*. Accordingly, the court concludes that neither Plaintiffs nor Defendants are entitled to summary judgment on Plaintiffs' Wiretap Act claim.

## B. Invasion of Privacy (Intrusion Upon Seclusion)

> [I]n order to establish a claim of intrusion upon seclusion, the plaintiff must prove two elements by a preponderance of the evidence: (1) that there was an intentional substantial intrusion, physically or otherwise, upon the solitude or seclusion of the complaining party, and (2) that the intrusion would be highly offensive to the reasonable person.

*Stein v. Marriott Ownership Resorts, Inc.*, 944 P.2d 374, 378 (Utah Ct. App. 1997) (quotations and citations omitted).

As noted above, it is undisputed that Stan did record Ms. Veater and Ms. Smith's conversations. Based on that fact, Plaintiffs contend that they have established the first element because Ms. Veater and Ms. Smith had a reasonable expectation of privacy in the clubhouse, which Plaintiffs assert is not a common public area. Plaintiffs further maintain that they have established the second element because the recordings would be highly offense to the reasonable person. Accordingly, Plaintiffs argue that they are entitled to summary judgment on this claim.

In response, Defendants argue that Plaintiffs have failed to satisfy the first element because no reasonable person would have an expectation of privacy for conversations the clubhouse, which they contend is a common public area. For the same reason, Defendants argue that Plaintiffs have failed to satisfy the second element because recording of conversations in a common public area would not be highly offensive to a reasonable person. Accordingly, Defendants argue that they are entitled to summary judgment on this claim. Alternatively, Defendants claim that summary judgment is not appropriate on this claim because disputed issues of material fact exist concerning whether Plaintiffs had reasonable expectation of privacy in the room where the conversations were recorded.

As with Plaintiffs' Wiretap Act Claim, the court concludes there are material facts in dispute concerning Plaintiffs' claim for invasion of privacy that preclude summary judgment. Again, most importantly, there are material facts in dispute about whether the Brooklane clubhouse is a common public area. Those facts go to both elements of Plaintiffs' invasion of privacy claim. Accordingly, the court concludes that neither Plaintiffs nor Defendants are entitled to summary judgment on Plaintiffs' invasion of privacy claim.

### C. Conclusion on Plaintiffs' Motion for Partial Summary Judgment and Defendants' Cross-Motion for Partial Summary Judgment

For the foregoing reasons, the court concludes that Plaintiffs' motion for partial summary judgment and Defendants' cross-motion for partial summary judgment are both denied.

## II. Defendants' Motion for Partial Summary Judgment

In this motion, Defendants argue that they are entitled to summary judgment on all claims brought on behalf of Ms. Usher's Estate because her claims do not survive her death under Utah's survival statute. Specifically, Defendants argue that Ms. Usher's claims do not survive because (A) they do not arise out of a personal injury and she has not incurred any special damages and (B) her allegations cannot be proven absent her testimony.

### A. Personal Injury and Special Damages

Ms. Usher's claims can be divided into two categories: (1) her state and common law claims and (2) her sole federal claim for violations of the Fair Housing Act.

#### 1. State and Common Law Claims

It is not disputed that Utah's survival statute governs the survival of Ms. Usher's state and common law claims. That statute provides, in relevant part:

(a)  A cause of action *arising out of personal injury to a person*, or death caused by the wrongful act or negligence of another, does not abate upon the death of the wrongdoer or the injured person. The injured person, or the personal representatives or heirs of the person who died, has a cause of action against the wrongdoer or the personal representatives of the wrongdoer for special and general damages, subject to Subsection (1)(b).

(b)  If, prior to judgment or settlement, the injured person dies as a result of a cause other than the injury received as a result of the wrongful act or negligence of the wrongdoer, the personal representatives or heirs of the person have a cause of action against the wrongdoer or personal representatives of the wrongdoer *only for special damages occurring prior to death* which resulted from the injury caused by the wrongdoer, including income loss.

(c)  "Special damages" does not include pain and suffering, loss of enjoyment of life, and other not readily quantifiable damages frequently referred to as general damages.

Utah Code § 78B-3-107(1)(a)-(c) (2008) (emphasis added). [10]

Defendants argue that Ms. Usher's state and common law claims do not survive her death because (a) they do not arise out of a personal injury and (b) she has not incurred any special damages.

### a.  Personal Injury

Defendants contend that Plaintiffs' state and common law claims did not survive her death under Utah's survival statute because they did not arise out of a personal injury.  However, the Utah Supreme Court's recently held that a broader definition of personal injury applied to Utah's survival statute to include all actions personal in nature, not just those related to bodily injury claims.  *See Gressman v. State*, 2013 UT 63, ¶29 (Utah 2013).  Consequently, Defendants

---

[10] Utah's survival statute was amended in 2009.  However, the 2009 amendment does not apply to Ms. Usher's claims because they accrued prior to the amendment.  Accordingly, the court will apply the pre-2009 amendment version of Utah's survival statute.

concede in their reply memorandum that this issue is no longer in dispute. As such, the court will not address this issue.

### b. Special Damages

Defendants argue that Ms. Usher has not provided any evidence of any special damages in this case. Defendants previously sent interrogatories to Ms. Usher requesting that she explain her damage claims. Ms. Usher's counsel responded that Ms. Usher did not have any measurable damages. Ms. Usher's initial disclosures also did not provide any calculable damage figures. To date, Ms. Usher has provided no computation of damages or any documents reflecting any quantifiable damages. Defendants assert that because Ms. Usher admits that she has no calculable damages in this case, she cannot prove a required element for her claims to survive her death under Utah's survival statute. *See* Utah Code § 78B-3-107(b)-(c) (2008).

In response to Defendants' arguments, Plaintiffs contend that they would have used the Medical Records and/or the Usher Records to prove special damages.[11] However, in two previous orders, the court denied Plaintiffs' motion for a court order for release of the Medical Records and struck Plaintiffs' supplemental memorandum in opposition to this motion and the Usher Records.[12] In addition, the court denied Plaintiffs' motion to reconsider those orders.[13] As such, the court concludes that Plaintiffs' argument on this point has no merit.

---

[11] The procedural history and definitions of the Medical Records and the Usher Records are discussed at length in this court's order denying Plaintiffs' motion to reconsider. *See* docket no. 112. As such, they will not be repeated here. The court incorporates that discussion into this memorandum decision and order by reference.

[12] *See* docket nos. 73, 106.

[13] *See* docket no. 112.

Because Ms. Usher has not shown special damages, as required by Utah's survival statute, *see id.*, the court concludes that Defendants are entitled to summary judgment on Ms. Usher's state and common law claims.

## 2. Federal Claim

As with Ms. Usher's state and common law claims, Defendants argue that her sole federal claim does not survive her death under Utah's survival statute because (a) they do not arise out of a personal injury and (b) she has not incurred any special damages. *See id.* § 78B-3-107(1)(a)-(c) (2008).

### a. Personal Injury

As noted above, this issue is no longer in dispute. Accordingly, the court will not address it here.

### b. Special Damages

There is a three-step inquiry to determine whether Utah's survival statute applies to Ms. Usher's federal claim under the Fair Housing Act. First, the court must determine whether federal law establishes a suitable rule to apply. *See Slade v. United States Postal Serv.*, 952 F.2d 357, 360 (10th Cir. 1991). The parties agree that the Fair Housing Act does not provide a suitable rule.

Second, if federal law does not provide a rule of decision, then federal law will incorporate the appropriate state law. *See id.* Accordingly, Utah's survival statute determines whether Ms. Usher's federal claim survives her death. *See* Utah Code § 78B-3-107 (2008).

Third, the court must consider whether the state rule is consistent with federal law. *See Slade*, 952 F.2d at 360. Relying on competing precedent, the parties present opposing arguments

on this issue. Plaintiffs contend that Utah's survival statute is inconsistent with the Fair Housing

Act. Defendants argue the opposite. The court agrees with the authorities relied upon by

Defendants and concludes that Utah's survival statute is consistent with federal law.

In *Robertson v. Wegmann*, 436 U.S. 584 (1978), the Supreme Court addressed the issue of

whether a state survival statute was consistent with federal law so as to abate the plaintiff's

estate's claim under 42 U.S.C. § 1983. The *Robertson* Court concluded that it the state survival

statute was consistent with federal law. *See id*. at 592-93. The *Robertson* Court held that "[t]he

goal of compensating those injured by a deprivation of rights provides no basis for requiring

compensation of one who is merely suing as the executor of the deceased's estate." *Id*. at 592.

The Court went on to hold that "[a] state statute cannot be considered 'inconsistent' with federal

law merely because the statute causes the plaintiff to lose the litigation." *Id*. at 593.

Although it addressed the issue in relation to a claim brought under 42 U.S.C. § 1983, the

court has determined that the reasoning of *Robertson* is persuasive in this case. Further, as noted

by Defendants, other courts have addressed the issue in various contexts and relied upon the

reasoning of *Robertson*. *See Allred v. Solaray*, 971 F. Supp. 1394, 1398 (D. Utah 1997) (relying

upon *Robertson* to conclude that the application of Utah's survival statute would not be

inconsistent with the Americans with Disabilities Act); *see also Cmty. House, Inc. v. City of

Boise*, No. 1:05-cv-00283-CWD, 2012 U.S. Dist. LEXIS 121412, at *13 (D. Idaho Aug. 24,

2012) (relying upon *Robertson* to conclude that application of Idaho's survival statute was not

inconsistent with the Fair Housing Act); *Rosenblum v. Colo. Dep't of Health*, 878 F. Supp. 1404,

1409 (D. Colo. 1994) (relying upon *Robertson* to conclude that Colorado's survival statute was

not inconsistent with the policies underlying the Americans with Disabilities Act); *Cnty. of L.A.*

*v. Superior Court*, 981 P.2d 68, 75-78 (Cal. 1999) (relying upon *Robertson* to conclude that application of California's survival statute was consistent with federal law for a claim under 42 U.S.C. § 1983).

Pursuant to those authorities, the court concludes that Utah's survival statute is consistent with the Fair Housing Act. Accordingly, the court concludes that it is applicable in this case.

Because Ms. Usher has not shown special damages, as required by Utah's survival statute, *see* Utah Code § 78B-3-107(b)-(c) (2008), the court concludes that Defendants are entitled to summary judgment on Ms. Usher's sole federal claim under the Fair Housing Act.

## B. Ms. Usher's Testimony

Defendants argue that none of Ms. Usher's claims can survive under Utah's survival statute because she is not available to testify. Under that statute, "neither the injured person nor the personal representatives or heirs of the person who dies may recover judgment except upon competent satisfactory evidence other than the testimony of the injured person." *Id*. § 78B-3-107(2) (2008).

Ms. Usher asserts several claims, all of which are based on her allegation that Stan made contact with her of an intimate nature. However, as noted by Defendants, Ms. Usher has not designated any witnesses with personal knowledge of the alleged contact. The only individual who has personal knowledge of the alleged contact, Stan, denies that it ever occurred. According to Defendants, Ms. Usher's Estate intends to prove her claims by introducing a series of written statements Ms. Usher made to the police, to the Utah Housing Authority, and to a victims' advocate. But, Defendants argue, these statements are not competent evidence. None of these statements were taken during this proceeding nor were any of these statements subject to cross-

examination. *See* Fed. R. Evid. 801, 802. Rather, these statements are inadmissible hearsay because they constitute out-of-court statements intended to prove the truth of the matter asserted. *See* Fed. R. Evid. 801, 802. Defendants further contend that the only damages Ms. Usher asserts are non-quantifiable emotional distress damages. Given the subjective nature of those damages, Defendants contend that only she would be competent to testify as to them. Defendants argue that, unlike a physical injury which can be the subject of medical reports and the objective testimony of attending physicians, it is impossible for anyone else to provide competent and satisfactory evidence as to the emotional distress actually and subjectively suffered by the now deceased Ms. Usher. In short, Defendants argue that absent any competent, admissible evidence regarding Ms. Usher's damages and regarding whether the intimate contact that Ms. Usher alleged actually occurred, Ms. Usher's claims must fail.

In response, Plaintiffs argue that the Usher Records will provide competent, satisfactory evidence to support Ms. Usher's claims. Plaintiffs also argue that the above-referenced statements and the Usher Records would likely fall under one of the exceptions to the hearsay rule.

Because this court has struck the Usher Records, any of Plaintiffs' arguments concerning the Usher Records are without merit. Moreover, the court is not persuaded by Plaintiffs' conclusory arguments that the above-referenced statements would fall under any of the asserted exceptions to the hearsay rule. *See* Fed. R. Evid. 803.

Accordingly, the court concludes that Plaintiffs have failed to identify "competent satisfactory evidence other than the testimony of the injured person" to support Ms. Usher's

claims.  Utah Code § 78B-3-107(2) (2008).  Therefore, the court has determined that all of her claims fail and that Defendants are entitled to summary judgment on those claims.

### C.  Conclusion on Defendants' Motion for Partial Summary Judgment

For the foregoing alternative reasons, the court concludes that Defendants are entitled to summary judgment on all of Ms. Usher's claims.  Accordingly, Defendants' motion for partial summary judgment is granted, and all of Ms. Usher's claims in this case are dismissed with prejudice.

### III.  Ronald's, DBR's, and DBC's Motions for Summary Judgment

The following background facts are applicable to these motions.  Brooklane was built in 1989 by DBC with a loan obtained from the Farmers Home Administration.  Brooklane provides affordable housing for low-income residents.  Because of the type of loan obtained by DBC, the rules of the United States Department of Agriculture ("USDA") govern the management of Brooklane.

Brooklane became the owner of the apartments in question on October 24, 2006, when title was legally transferred from DBC to Brooklane.  According to the articles of organization for Brooklane, Stan is the sole manager of Brooklane and cannot be removed without his consent.  Brooklane is owned by Stan and a family trust (with which Ronald is apparently involved).  Ronald, DBR, and DBC are not managers or members of Brooklane.

Plaintiffs claim that the validity of the transfer from DBC to Brooklane and the validity of the creation of Brooklane are in dispute.  In support of that claim, Plaintiffs rely on documents and policies related to the above-referenced USDA rules.  Plaintiffs claim that DBC did not have consent of the USDA for the transfer to Brooklane, which allegedly violates USDA rules.

Plaintiffs further claim that a plan submitted to the USDA ("2010 Plan") is inconsistent with the articles of organization for Brooklane.

Plaintiffs also point to various facts, which they apparently believe demonstrate that Stan was acting as an agent of Ronald, DBR, and DBC. Plaintiffs note that the insurance policies for Brooklane name Ronald as an insured; Stan and Ronald are both holders of the bank account for Brooklane; there are some address and phone number similarities among Brooklane, DBC, and DBR; and Plaintiffs delivered their rent payments to DBR's office.

The substance of the briefing on these three motions is nearly identical. In the motions, Ronald, DBR, and DBC argue, among other things, that they are entitled to summary judgment on all claims against them for the following reasons: (A) Plaintiffs have failed to establish that an agency relationship existed between Stan and Ronald, DBR, or DBC; and (B) Ms. Veater's claims predating October 24, 2006 transfer from DBC to Brooklane are barred by the applicable statute of limitations.

## A. Agency Relationship

Ronald, DBR, and DBC first argue that Plaintiffs have failed to establish that Stan had actual authority to act as Ronald's, DBR's, or DBC's agent. Ronald, DBR, and DBC assert that the undisputed facts establish that Stan was acting in his capacity as manager of Brooklane at all times pertinent to Plaintiffs' claims. Ronald, DBR, and DBC note that Stan was not their employee or agent because Stan was the sole manager of Brooklane. Ronald, DBR, and DBC also note that they had no direct ownership or managerial interest in Brooklane, which owned and operated the apartments from 2006 forward. Ronald, DBR, and DBC finally note that there

is no evidence that Stan ever represented that he was acting as an agent of Ronald, DBR, or

DBC.

The court agrees with Ronald, DBR, and DBC's arguments. The undisputed facts cited

above clearly demonstrate that Stan had no actual authority to act as Ronald, DBR, or DBC's

agent. Plaintiffs have failed to point to any evidence that would dispute those facts.

Ronald, DBR, and DBC next argue that Plaintiffs have failed to establish that Stan had

apparent authority to act as their agent.

> In order to show apparent authority, the following must be
> established: (1) that the principal has manifested his [or her]
> consent to the exercise of such authority or has knowingly
> permitted the agent to assume the exercise of such authority; (2)
> that the third person knew of the facts and, acting in good faith,
> had reason to believe, and did actually believe, that the agent
> possessed such authority; and (3) that the third person, relying on
> such appearance of authority, has changed his [or her] position and
> will be injured or suffer loss if the act done or transaction executed
> by the agent does not bind the principal.

*Luddington v. Bodenvest, Ltd.*, 855 P.2d 204, 209 (Utah 1993) (quotations and citations omitted)

(alterations in original).

The Utah Supreme Court has held that "[i]t is the principal who must cause third parties

to believe that the agent is clothed with apparent authority." *City Elec. v. Dean Evans Chrysler-*

*Plymouth*, 672 P.2d 89, 90 (Utah 1983); *see also Bank of Salt Lake v. Corp. of the President of*

*the Church of Jesus Christ of Latter-Day Saints*, 534 P.2d 887 (Utah 1975) ("Manifestation

sufficient to support a claim of reliance on an agent's apparent authority must come from the

principal."). This principle has been followed by this court. "Apparent authority is not apparent

simply because it looks so to the person with whom [the] agent deals. Rather, it is the principal

who must cause third parties to believe that the agent is clothed with apparent authority." *Jaeger*

*v. W. Rivers Fly Fisher*, 855 F. Supp. 1217, 1220 (D. Utah 1994) (quotations and citations omitted) (alteration in original). Further, if a party believes that an agency relationship exists, it is that party's responsibility to verify that the principal conferred such authority on the alleged agent. *See Workers' Comp. Fund v. Wadman Corp.*, 210 P.3d 277, 282 (Utah 2009).

Ronald, DBR, and DBC argue that Plaintiffs have failed to establish that Stan had apparent authority to act as Ronald's, DBR's, or DBC's agent. The court agrees. The undisputed facts demonstrate that none of the Plaintiffs ever verified Stan's so-called authority to act on behalf of Ronald, DBR, or DBC; Stan never told any of the Plaintiffs that he was acting as an agent of Ronald, DBR, or DBC; Ronald never did anything to lead any of the Plaintiffs to belief that Stan was acting as an agent of Ronald, DBR, or DBC; and none of the Plaintiffs ever relied upon any purported authority of Stan to act on behalf of Ronald, DBR, or DBC. Plaintiffs have failed to point to any evidence that would dispute those facts. While Plaintiffs do rely upon certain facts to argue that an agency relationship existed, as noted above, the court concludes that those facts do not demonstrate that Stan had apparent authority to act as Ronald's, DBR's, or DBC's agent. While they may demonstrate some connection among Stan, Ronald, DBR, and DBC, they do not rise to the level of creating apparent authority. Furthermore, Plaintiffs have failed to point to any evidence indicating that any of them ever took affirmative steps to verify that Ronald, DBR, or DBC ever conferred any authority on Stan to act as an agent. Without such evidence, Plaintiffs cannot demonstrate that Stan had apparent authority. *See Wadman Corp.*, 210 P.3d at 282.

In response to Ronald, DBR, and DBC's agency argument, Plaintiffs make several contentions. First, Plaintiffs first argue that the validity of the transfer from DBC to Brooklane

and the validity of the creation of Brooklane are in dispute, which Plaintiffs appear to contend would subject Ronald, DBR, and DBC to some liability for Stan's alleged conduct. In support of that claim, Plaintiffs rely on the 2010 Plan. As noted above, Plaintiffs claim that DBC did not have consent of the USDA for the transfer to Brooklane, which allegedly violates USDA rules. Plaintiffs further claim that the 2010 Plan is inconsistent with the articles of organization for Brooklane because the 2010 Plan vests Ronald with certain responsibilities. Plaintiffs appear to argue, based on those facts, that the transfer from DBC to Brooklane is invalid. The court concludes that Plaintiffs' argument is without merit. Plaintiffs cite no authority for the proposition that the 2010 Plan somehow supersedes the articles of incorporation of Brooklane. Further, as noted by Defendants, the 2010 Plan is not known to, authorized by, or signed by Ronald, and there is no indication that it was ever submitted to the USDA. In any event, Plaintiffs are not parties to the 2010 Plan allegedly submitted to the USDA and, consequently, the court concludes that they cannot make claims based upon it. In the court's view, any remedy for violation of the 2010 Plan would rest with the USDA, not Plaintiffs.

Second, Plaintiffs make the unsupported argument that Stan's relationship with Ronald, DBR, and DBC is "most analogous to that of employer-employee." Plaintiffs then go on to cite an employment case for the proposition that Ronald, DBR, and DBC are liable for Stan's conduct. *See Hollins v. Delta Airlines*, 283 F.3d 1255, 1258 (10th Cir. 2001). That argument fails. As noted by Defendants, Plaintiffs have not pointed to any evidence to support their claim that Stan is an employee of Ronald, DBR, or DBC. Further, given that Stan was the sole manager of Brooklane during the relevant time period, he is clearly not an employee of Brooklane. As such, the court concludes that Plaintiffs' reliance on *Hollins* is misplaced.

Based on the foregoing, the court concludes that Plaintiffs have failed to establish that Stan had either actual authority or apparent authority to act as Ronald's, DBR's, or DBC's agent. Given that all of Plaintiffs' allegations in this case focus on Stan's conduct, Ronald, DBR, and DBC cannot be held liable for that conduct absent such an agency relationship. Therefore, the court concludes that Ronald, DBR, and DBC are entitled to summary judgment on Plaintiffs' claims against them.

### B.  Statute of Limitations

Ronald, DBR, and DBC argue that any of Ms. Veater's claims predating the October 24, 2006 change in ownership of Brooklane are barred by the applicable statute of limitations. Ronald, DBR, and DBC assert that, even when the longest statute of limitations governing any of Ms. Veater's claims against Ronald, DBR, or DBC is appled, which is Utah's catch-all 4-year statute of limitations, the limitations period would have expired no later than October 24, 2010, well before Veater filed her initial complaint in this case on May 31, 2011. *See* Utah Code § 78B-2-307. The court agrees. Accordingly, the court concludes that any of Ms. Veater's claims predating the October 24, 2006 transfer from DBC to Brooklane are barred.

### C.  Conclusion on Ronald's, DBR's, and DBC's Motions for Summary Judgment

For the foregoing reasons, the court concludes that Ronald, DBR, and DBC are entitled to summary judgment on all of Plaintiffs' claims against them. Accordingly, Ronald's, DBR's, and DBC's motions for summary judgment are all granted, and all of Plaintiffs' claims in this case against Ronald, DBR, and DBC are dismissed with prejudice.

## CONCLUSION AND ORDER

In summary, **IT IS HEREBY ORDERED**:

1.  Plaintiffs' motion for partial summary judgment[14] and Defendants' cross-motion for partial summary judgment[15] are both **DENIED**.

2.  Defendants' motion for partial summary judgment[16] is **GRANTED**.  All of Ms. Usher's claims in this case are **DISMISSED WITH PREJUDICE**.

3.  Ronald's motion for summary judgment,[17] DBR's motion for summary judgment,[18] and DBC's motion for summary judgment[19] are all **GRANTED**.  All of Plaintiffs' claims against Ronald, DBR, and DBC are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

DATED this 31st day of March, 2014.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge

---

[14] *See* docket no. 44.

[15] *See* docket no. 56.

[16] *See* docket no. 62.

[17] *See* docket no. 68.

[18] *See* docket no. 69.

[19] *See* docket no. 70.